582

■ In the Matter of ADLER'S CREAMERY, INC., Petitioner, against COMMISSIONER OF AGRICULTURE AND MARKETS OF THE STATE OF NEW YORK, Respondent.— Proceeding pursuant to article 78 of the Civil Practice Act to review a determination of the Commissioner of Agriculture and Markets. Petitioner operates a milk receiving station and manufacturing plant at Fort Plain. Its president has been in the milk business for 40 years, and the Fort Plain plant represents an investment of over a million dollars. The Commissioner of Agriculture and Markets has denied the petitioner's application for the renewal of its milk dealer's license on the ground that in January, 1957 there had been a technical violation of statute in connection with the purchase of an additional milk route in Herkimer County and has also denied petitioner's application for the extension of its license to include the additional business purchased. The technical violation on which the Commissioner terminated the right of the petitioner to do any milk business is itself sufficiently established in the record. It is, in effect, that when the petitioner purchased the additional business and when it sent the necessary papers, including the surrendered license of the seller, to the department for processing and approval of the purchase, it undertook to serve the seller's customers while the application was pending. In the nature of things in any field of activity where a license is required and sales and purchases of interests are permitted, the business must either stop in the period between the sale and the approval by public authority, or it must continue under some form of public sanction until the formal license is issued. If the business must continue, either the sale is to be deemed contingent on approval and the seller is deemed to continue it, or the purchaser is deemed to have temporary authority until the license is issued. If public authority requires, as this record suggests, that the existing license be surrendered with the application of the purchaser for a license, it must be deemed to stop the operation during the pendency of the application. It is clear from the testimony in this record that the Department of Agriculture and Markets does not want milk service to stop during the pendency of applications. On March 15, 1955 the department circulated "to all milk dealers" a memorandum for "Transfers of Milk Businesses". This noted that on the purchase of a milk business it is necessary for a person holding a license to make application for an extension of license, and that the transfer of a business "does not automatically result" in such an extension. It is suggested that application be made well in advance of the time of transfer and it might "be desirable" to make it contingent upon the issuance of the extension. Then the memorandum said: "If you are considering the acquisition of some additional business, it would be well to contact this office and you will be advised as to the procedure to follow". This was a plain invitation to purchasers of milk businesses to obtain the personal advice of the department on procedure to be followed. The memorandum was not an indication that the purchased business could not under any circumstances be operated until the extension was approved. The petitioner attempted to show that a few days before it had purchased the business here involved it had purchased another business, pursuing exactly the same procedure as here followed, and the extension was promptly approved by the department. This proof was excluded as irrelevant. Petitioner also attempted to show that in an earlier purchase it had consulted J. A. Conboy, Supervisor of Licenses for the department, and followed his advice. This was excluded by the hearing officer. Petitioner also showed that in the transfer here it asked Mr. Conboy the procedure to be followed and was told to "send a copy of the bill of sale, surrender Francis Davis' [the seller] license". Mr. Conboy did not testify at the hearing. On this record we think the exclusion of proof of what the department had done

immediately before on the application for the previous license was improper. When the department officially and formally invites licensees to ask to be "advised on the procedure to follow" it seems to violate fundamental concepts of fair play to exclude proof of what the department did in respect of procedure when its advice was asked. If, as petitioner suggests in this court, it was told to surrender the seller's license and to serve the seller's customers while the extension was in process, it would be grossly unfair to make such a procedure the basis for denying the extensions, and what is even more drastic, terminating the applicant's right to do any business. Even if this is, as the Commissioner regards it, a violation of statute, it is the merest technical violation, and if suggested by the department's officers as a practical way to continue service rather than a contingent sale of the business, it would not justify the action which the Commissioner took. The determinations as we view them are arbitrary and the procedure followed unfair and capricious. Determinations annulled and the applications remitted to the respondent for further proceedings. Bergan, J. P., Coon, Gibson, Herlihy and Reynolds, JJ., concur.